36 LRA 628

108 527
f 118 610
108 527
148 486

PEOPLE *v.* SMITH.[1]

1. CONSTITUTIONAL LAW—POLICE POWER—PROTECTION OF EMPLOYÉS.

The State, in the exercise of its police power, may prescribe reasonable regulations for the protection of employés, notwithstanding the latter, as between themselves and their employer, may have assumed the risk of the injuries sought to be averted.

2. SAME—RIGHT OF PRIVATE PROPERTY.

The constitutional right of the citizen to use his property without regulation is plain, unless the public welfare requires that such use be regulated. But if the public welfare

[1] With this case in 32 L. R. A. 853, is a note collecting the authorities on the police power to protect the health of employés.

does require it, the private right must yield to the public exigency.

3. SAME—PRESUMPTION AS TO VALIDITY OF STATUTE.
Legislative regulation of the use of private property will be presumed to be reasonable and necessary, unless the contrary appears from facts of which the court may take judicial notice.

4. SAME—USE OF EMERY WHEELS.
Act No. 136, Pub. Acts 1887 (3 How. Stat. § 1690z1 *et seq.*), as amended by Act No. 111, Pub. Acts 1893, requiring emery wheels which are in continuous use to be provided with blowers to carry away the dust arising from their operation, is a valid exercise of the police power.

5. SAME—CLASS LEGISLATION.
The statute is not open to the objection that it is class legislation, since all persons who are given continuous employment over dry wheels are within the provisions of the act.

6. SAME.
Whether the law is invalid as applied to a person operating his own wheel,—*quære*.

Error to Wayne; Hosmer, J.   Submitted January 30, 1896.   Decided March 3, 1896.

Joseph N. Smith was convicted in justice's court of having violated the statute regulating the use of emery wheels.   On *certiorari* to the circuit the conviction was affirmed, and respondent brings error.   Affirmed.

*Corliss, Andrus & Leete* (*Arthur Webster*, of counsel), for appellant.

*Allan H. Frazer*, Prosecuting Attorney, and *Ormond F. Hunt*, Assistant Prosecuting Attorney, for the people.

HOOKER, J.   The defendant was convicted of a violation of the statute requiring emery wheels to be provided with blowers to carry away the dust arising from their operation.   Act No. 111, Pub. Acts 1893, and 3 How. Stat. § 1690z3.   Counsel for the defendant assert that they care to raise but one question, viz., the constitutionality of this law.

It is not disputed that the State may regulate the use
of private property, when the health, morals, or welfare
of the public demands it.    Such laws have their origin in
necessity.    Prent. Police Powers, 4–8, 52, 54, 161, 433.
Counsel say that this law is invalid because it does not
apply to all, not even to all who use emery wheels, be-
cause some may use with water, and others may not
work continuously.    Again, it is contended that it is in-
valid because it prohibits a man from running his own
machine continuously without protection.    We need not
concern ourselves with the last objection, because we
have not the case before us, and for the reason that the
law may be valid to the extent that others are protected,
and invalid in the particular mentioned, if such a con-
struction is unavoidable.    For the purposes of this case,
it may be said that all persons who are given continuous
employment over dry emery wheels are within the pro-
visions of this act.    This singles out no class, as it applies
to all persons who use emery wheels in that manner.
Necessarily, the practical application is limited to those
who engage in such business, but such is the case with
many laws.    All criminal laws apply only to those who
choose to break them.    This law applies to all who
choose to use the emery wheel.    The legislature has
seen fit to permit certain uses of the dry wheel without
a blower, while in other cases it is required.    This is
competent, and is not class legislation, as between opera-
tives.    It fixes the limits of use without a blower, and re-
quires it after such limits are passed; but the rules apply
to all.

The vital question in this case is the right of the State
to require the employer to provide, and the employé to
use, appliances intended for the protection of the latter.
Laws of this class embrace provisions for the safety and
welfare of those whom necessity may compel to submit
to existing conditions involving hazards which they
would otherwise be unwilling to assume.    Among them

108 Mich.—34.

are provisions for fire escapes, the covering or otherwise rendering machinery safe, the condition of buildings, ventilations, etc. In the main, where the necessity is obvious, they commend themselves to those who have at heart the welfare of their fellows, and should be upheld if they do not contravene private rights.

The Constitution secures to the citizen the rights of life, liberty, and private property, and, as the only value in the latter consists in its use, it follows that the right to use private property is within the provision. There can, however, be no doubt that the use of private property may be regulated by law. No one would think of questioning the validity of laws regulating the manufacture, use, and sale of dangerous drugs or explosives, or laws designed to insure safety in railway travel. The inspection of boilers, fire escapes upon hotels, means of exit from churches and other buildings which the public are wont to frequent, are familiar instances of the exercise of the police power. These rules are defended upon the ground that they are necessary to the safety of the public; not the entire populace, but such persons as shall lawfully place themselves in a position requiring such protection. Where the law is aimed at acts or conditions which threaten contagion,—as where sewers, disinfection, or quarantine is required,—the necessity of and the power to make such laws are obvious. But at first blush they may not be so apparent where there is no direct danger to others than the party whose business is sought to be regulated, and those with whom he contracts. It is contended in this case that neither the public welfare nor health is involved, inasmuch as the protection sought to be afforded is limited to the individual employé, who, by his contract of employment, signifies a willingness to use the machine in its dangerous condition, and therefore cannot be heard to complain.

It is the law that a manufacturer may provide inferior, and even dangerous, machinery, tools, and utensils; and

enterprises more or less hazardous are common and lawful. Men may contract to use such machinery, or to perform dangerous service, and have no remedy if injured. But we are not aware that the police power is limited by such contracts. As between the parties themselves, the contract may cut off legal redress for injuries sustained; but we are not satisfied that the authority of the State is limited to the protection of those who do not sustain contract relations with each other. In the absence of a law requiring fire escapes, one who works in a high building and is injured may be held to have assumed the risk incident to his employment; but we know of no rule that precludes the State from making a regulation requiring fire escapes to be placed upon high buildings, though the only object be to facilitate the escape of employés who are under contract to work there without such appliances for escape. Fire escapes in hotels, and means of exit in theaters and public halls, are required by law for the benefit of patrons, who are there by virtue of contract relations with the proprietor. So long as the rule is general, and the danger to the public—*i. e.*, that portion of the public who are subjected to the danger—is clear, it is a proper subject for legislative intervention. *In re Jacobs*, 98 N. Y. 98 (50 Am. Rep. 636), is cited to sustain the proposition contended for, but it cannot be said to have decided the question, although allusion is made to voluntary submission to alleged dangerous conditions. The case does not dispute the power to regulate the business of private persons where the public welfare requires, but does deny the power of regulation in the absence of such necessity, where the law has no relation to the public welfare or health. See, also, Tied. Lim. § 122c.

The case of *People* v. *Warden of City Prison*, 144 N. Y. 529, is an interesting one upon this question, and although the decision there laid down is criticised (perhaps justly) by Mr. Justice Peckham in a dissenting opinion, concurred in by two of his associates, the power

to regulate private affairs where the public necessity exists is asserted in an exhaustive opinion by the same learned judge in the case of *Health Department of New York* v. *Rector, etc., of Trinity Church*, 145 N. Y. 32, in the course of which the power to regulate the appliances for manufacturing is asserted. Id. 43, 44. The opinion says:

"Hand rails to stairs, hoisting shafts to be inclosed, automatic doors to elevators, automatic shifters for throwing off belts or pulleys, and fire escapes on the outside of certain factories,—all these were required by the legislature from such owner, and without any direct compensation to him for such expenditure. Has the legislature no right to enact laws such as this statute regarding factories, unless limited to factories to be thereafter built? Because the factory was already built when the act was passed, was it beyond the legislative power to provide such safeguards to life and health, as against all owners of such property, unless upon the condition that these expenditures to be incurred should ultimately come out of the public purse? I think to so hold would be to run counter to the general course of decisions regarding the validity of laws of this character, and to mistake the foundation upon which they are placed."

The trouble with these cases arises over the inability of the courts to fix a rigid rule by which the validity of such laws may be tested. Each law of the kind involves the questions: (1) Is there a threatened danger? (2) Does the regulation invade a constitutional right? (3) Is the regulation reasonable? In the present case no controversy is raised over the first of these. Hence we are not called upon to discuss it. As is implied by what has been said, the constitutional right to use property without regulation is plain, unless the public welfare requires its regulation. If the public welfare does require it, the right must yield to the public exigency. And it is upon this question of necessity that the third question depends. All, then, seems to be embraced in the question of necessity. Unless the emery wheel is dangerous to health, there is no necessity, and consequently no power, to regulate it.

Unless the blower is a reasonable and proper regulation, it is not a necessary one. Who shall decide the question, and by what rule? Shall it be the legislature or the courts? And, if the latter, is it to be determined by the evidence in the case that happens to be first brought, or by some other rule? Does it become a question of fact to be submitted to the jury or decided by the court? Of all the devices known to human tribunals, the jury stands pre-eminent in its ability to determine cases in direct violation of and contrary to law, without impairing the binding force of the law as a rule of future action. We have known of instances where the question of the constitutionality of acts, as applied to the particular case on trial, has been made to depend upon the finding of the jury upon the facts in the case. But there is a manifest absurdity in allowing any tribunal, either court or jury, to determine from testimony in the case the question of the constitutionality of the law. Whether this law invades the rights of all the persons using emery ˋwheels in the State is a serious question. If it is a necessary regulation, the law should be sustained, but, if an unjust law, it should be annulled. The first case presented might show by the opinions of many witnesses that the use of the dry emery wheel is almost necessarily fatal to the operative, while the next might show exactly the opposite state of facts. Manifestly, then, the decision could not settle the question for other parties, or the fate of ˙ the law would depend upon the character of the case first presented to the court of last resort, which would have no means of ascertaining whether it was a collusive case or not, or whether the weight of evidence was in accord with the truth. It would seem, then, that the questions of danger and reasonableness must be determined in another way. The legislature, in determining upon the passage of the law, may make investigations which the courts cannot. As a rule, the members (collectively) may be expected to acquire more technical and experimental knowledge of such

matters than any court can be supposed to possess, both as to the dangers to be guarded against and the means of prevention of injury to be applied; and hence, while under our institutions the validity of laws must be finally passed upon by the courts, all presumptions should be in favor of the validity of legislative action. If the courts find the plain provisions of the Constitution violated, or if it can be said that the act is not within the rule of necessity in view of facts of which judicial notice may be taken, then the act must fall; otherwise it should stand. Applying this test, we think the law constitutional, and the judgment is therefore affirmed.

The other Justices concurred.

PER CURIAM. Our attention is called to the fact that under the opinion heretofore filed the act as originally passed might be held unconstitutional, inasmuch as it does not discriminate between dry and wet wheels, which last, it is said, cannot possibly produce dust, and therefore do not require the blower. This question was necessarily passed upon in the former opinion, as the amendment could not be sustained if the original act was invalid. In addition to what was said in the former opinion, we may say that two sufficient reasons may be given for not holding the first act void: *First*. We are not able to say that a wheel may not be run with or without water at pleasure, in which case it would seem proper that the blower should be required as an efficient means of preventing its being run without water. *Second*. If this were not so, the act might be construed as applicable only to wheels capable of producing dust, as the language of the act clearly shows that it was intended to reach such, and an act should always be so construed as to bring it within the Constitution, if it can be reasonably done. *Coit & Co.* v. *Sutton*, 102 Mich. 324.