PEOPLE *v.* WORDEN GROCER CO.

1. Statutes—Subject-Matter—Sufficiency of Title.
   The subject-matter of a statute intended to prevent adultera-
   tion of vinegar, or deception in its sale, is sufficiently expressed
   by a title reading, "An act in relation to the manufacture
   and sale of vinegar."

2. Same—Construction—Vinegar—Standard Ingredients.
   Act No. 71, Pub. Acts 1897, forbidding in section 1 the sale of
   cider vinegar containing less than one and three-fourths per
   cent. of cider vinegar solids, and providing in section 2 that
   "fermented vinegar" shall contain, in addition to such per
   cent. of solids contained in the fruit or grain from which it is
   made, two and a half tenths of one per cent. ash or mineral
   matter, requires that all fermented vinegar should come up
   to such standard, whether made from fruit or grain.

3. Same—Public Policy—Legislative Considerations.
   In a prosecution for the sale of vinegar not in compliance with
   the statutory standard, a contention that the test provided
   for is arbitrary, unscientific, and not calculated to protect
   the public health against spurious vinegar, will not be con-
   sidered, since the investigation of facts entering into ques-
   tions of public policy merely is exclusively within the prov-
   ince of the legislature.

4. Same—Reasonableness—Province of Jury.
   The question of the reasonableness of a statute cannot be sub-
   mitted to a jury, to be determined from expert testimony.

5. Pure-Food Laws—Prosecutions for Violation—Due Process
   of Law.
   One charged with the sale of vinegar not in compliance with
   the statutory standard is not entitled to have a sample of the
   vinegar left with him by the prosecution, nor can he com-
   plain, upon conviction, that he was deprived of his property
   without due process of law because he was unable to obtain
   a sample for analysis, where he was not prevented from doing
   so by any person interested in the prosecution of the suit.

6. Same—Intent.
   Guilty knowledge or intent is not an element of the offense of

selling vinegar below the standard prescribed by Act No. 71, Pub. Acts 1897.[1]

Exceptions before judgment from Kent; Adsit, J. Submitted November 18, 1898.    Decided December 6, 1898.

The Worden Grocer Company was convicted of selling low-grade vinegar, in violation of Act No. 71, Pub. Acts 1897.    Affirmed.

*Rood & Hindman*, for appellant.

*Fred A. Maynard*, Attorney General, *Frank A. Rodgers*, Prosecuting Attorney, and *Benn M. Corwin*, Assistant Prosecuting Attorney, for the people.

LONG, J.    The complaint in this cause charges that the defendant—

"On February 5, 1898, did unlawfully sell and deliver to John T. Owens, of Benton Harbor, Michigan, a large quantity, to wit, one barrel, of vinegar, which was not then and there in compliance with the provisions of Act. No. 71, Pub. Acts 1897, in this, viz.:    That said vinegar was sold as 'fermented cider vinegar,' and branded as such; that said vinegar contained less than one and three-fourths per cent., by weight, upon full evaporation (at the temperature of boiling water), of solids contained in the fruit from which said vinegar is fermented, to wit, one and fifty-one one-hundredths per cent. of solids; and said vinegar contained less than two and a half tenths of one per cent. ash or mineral matter, the same being the product of the material from which said vinegar was manufactured, to wit, eight one-hundredths of one per cent. of ash or mineral matter; against the form of the statute in such case made and provided," etc.

The cause was commenced in the police court, and, being removed to the circuit, came on to be heard before a jury.    The defendant refused to plead, and coun-

---

[1] How far intent is an element of a crime is considered at length in a note to *People* v. *Flack*, (N. Y.) 11 L. R. A. 807.

sel for defendant thereupon made a motion to quash the complaint and summons for several reasons, which will be hereafter discussed. The court, upon the trial, directed a verdict of guilty, and the cause comes to this court on exceptions before judgment.

The title of the act reads, "An act in relation to the manufacture and sale of vinegar, and to repeal Act No. 224 of the Public Acts of 1889, approved," etc. Sections 1 and 2 of the act, being the sections in question, provide:

" SECTION 1. *The People of the State of Michigan enact*, that no person shall manufacture for sale, offer or expose for sale, sell or deliver, or have in his possession with intent to sell or deliver, any vinegar not in compliance with the provisions of this act. No vinegar shall be sold as apple, orchard, or cider vinegar which is not the legitimate product of pure apple juice, known as apple cider, or vinegar not made exclusively of said apple cider, or vinegar into which foreign substance, drugs, or acids have been introduced, as may appear upon proper test, and upon said test shall contain not less than one and three-fourths per cent., by weight, of cider vinegar solids, upon full evaporation at the temperature of boiling water.

" SEC. 2. All vinegar made by fermentation and oxidation without the intervention of distillation shall be branded ' Fermented Vinegar,' with the name of the fruit or substance from which the same is made. And all vinegar made wholly or in part from distilled liquor shall be branded ' Distilled Vinegar,' and all of such distilled vinegar shall be free from coloring matter added during or after distillation, and from color other than that imparted to it by distillation. And all fermented vinegar not distilled shall contain not less than one and three-fourths per cent., by weight, upon full evaporation (at the temperature of boiling water ), of solids contained in the fruit or grain from which said vinegar is fermented, and said vinegar shall contain not less than two and a half tenths of one per cent. ash or mineral matter, the same being the product of the material from which said vinegar is manufactured. And all vinegar shall be made wholly from the fruit or grain from which it purports to be or is represented to be made, and shall contain no foreign substance, and shall contain not less than four per cent., by weight, of absolute acetic acid."

It appears by the testimony that the defendant, a Michigan corporation, doing business at Grand Rapids, on February 5, 1898, sold a barrel of vinegar to one John T. Owens, of Benton Harbor. The sale is admitted. A sample of the vinegar was taken from this barrel, and analyzed by the State analyst, Mr. Fred H. Borradaile. The correctness of this analysis is not disputed. This analysis showed that the vinegar did not comply with the requirements of the statute, in that it did not contain the amount of solids nor the amount of ash or mineral matter required. The contentions made by counsel for defendant mostly relate to the validity of the act.

1. It is contended that the title to the act does not express any object; that the act was intended to prevent deception in the sale of vinegar, or to prevent adulteration of vinegar, but that no such object is expressed in the title, and that the act is therefore in conflict with section 20 of article 4 of the Constitution of this State, which provides that "no law shall embrace more than one object, which shall be expressed in its title." We think this contention sufficiently answered by what was said by this court in *Soukup* v. *Van Dyke*, 109 Mich. 681. There the title was, "An act relative to justices' courts in the city of Grand Rapids." It was said:

"The title is sufficient if it fairly and reasonably announces the object, and that is a single one. If this requirement be observed, the legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it."

In *People* v. *Kelly*, 99 Mich. 82, the title under discussion was, "An act relative to disorderly persons, and to repeal," etc. See, also, *State, ex rel. Weir,* v. *Davis Co. Judge*, 2 Iowa, 280; *McAunich* v. *Railroad Co.*, 20 Iowa, 342.

2. Counsel contend that, the complaint being drawn under section 2 of the act, no conviction can follow; that, if any violation of the law be found, it is of section 1, and

not of section 2, of the act; that, therefore, the complaint was drawn under the wrong section. This contention cannot be sustained. It is plain, from the reading of these sections, that the legislature intended that all fermented vinegar should come up to the required standard, whether made from fruit or grain.

3. The defendant contends that the act is unreasonable, and therefore void, as beyond the police power of the State, in that the test for cider vinegar in regard to solids is arbitrary, unscientific, and not calculated to accomplish the end sought by the legislature, viz., to protect the public health against spurious vinegar; that such test is no test, because:

(a) Said solids and ash are indifferent ingredients of vinegar, from a hygienic standpoint.

(b) Their comparative absence or presence is not an essential ingredient of pure apple cider vinegar.

(c) A vinegar can be manufactured which will satisfy the requirements of the statute, and yet contain no materials from apples or the product of apples.

(d) A pure apple cider vinegar is frequently made which is below the requirements of the statute in solids and ash.

(e) The less proportion of solids is a proof of greater purity in the vinegar, and of its better keeping qualities.

These questions might very properly be addressed to the legislature, but are matters with which the court has nothing to do. It is not a part of the functions of the court to investigate the facts entering into questions of public policy merely. Under our system, that power is lodged in the legislative branch of the government. It belongs to that branch to determine primarily what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety. *Barton* v. *McWhinney*, 85 Ind. 481; *Mugler* v. *Kansas*, 123 U. S. 660; *Powell* v. *Pennsylvania*, 127 U. S. 685. In *People* v. *Snowberger*, 113 Mich. 92, it was said by this court:

"The act may work hardship in many cases, but that

question is one to be addressed to the legislature, and not to the courts."

The question of the reasonableness of the acts found in many States relative to the sale of milk below a certain standard has been frequently raised in the courts, and the acts upheld.   In *Com.* v. *Evans*, 132 Mass. 11, the court, passing upon such a statute, said:

"The intention of the legislature, and the practical operation of this section in connection with the third section, is to provide that it shall be unlawful to sell milk containing less than 13 *per centum* of milk solids.   This belongs to the class of police regulations designed to prevent frauds, and to protect the health of the people, which it is within the constitutional power of the legislature to enact."

In *State* v. *Smyth*, 14 R. I. 100 (51 Am. Rep. 344), the court said:

"It was the purpose of the statute to prohibit, not only the dealing in milk which had been adulterated, but also in milk of such inferior quality as to fall below the standard named in section 3.   It is equally a fraud on the buyer whether the milk which he buys was originally good and has been deteriorated by the addition of water, or whether in its natural state it is so poor that it contains the same proportion of water as that which has been adulterated."

See, also, *Shivers* v. *Newton*, 45 N. J. Law, 469; *Bertholf* v. *O'Reilly*, 74 N. Y. 509 (30 Am. Rep. 323); *State* v. *Campbell*, 64 N. H. 403 (10 Am. St. Rep. 419).

But counsel contend that the reasonableness of this act is a question of fact for the jury to determine from the expert chemical evidence.   This question is neither for the court nor the jury to determine.   In *People* v. *Cipperly*, 101 N. Y. 634, 37 Hun, 324, that very question was discussed, and decided adversely to the claim here. It was said:

"The defendant takes the broader ground that the legislature cannot, under the constitution, prohibit the sale

118 MICH.—39.

of milk drawn from healthy cows, which, in its natural state, falls below the standard fixed by the act, unless such milk, or the articles made from it, are in fact unwholesome or dangerous to public health.   How is that question of fact to be determined?   The court cannot take judicial notice whether milk below the standard is or is not unwholesome or dangerous to public health.   Is that to be a question for the jury?   If so, the court must charge a jury in each case that, if they find milk below that standard to be unwholesome, then the statute is constitutional; if they find it to be wholesome, then the statute is unconstitutional.   Evidently a ·constitutional question cannot be settled, or, rather, unsettled, in that way.   The constitutionality would vary with the varying judgments of juries."

In the emery-wheel case before us in *People* v. *Smith*, 108 Mich. 534 (32 L. R. A. 853, 62 Am. St. Rep. 715), a somewhat similar question was discussed.   It was said:

"If the courts find the plain provisions of the Constitution violated, or if it can be said that the act is not within the rule of necessity in view of facts of which judicial notice may be taken, then the act must fall; otherwise it should stand."

See, also, *People* v. *Girard*, 145 N. Y. 109 (45 Am. St. Rep. 595).

4.  Counsel also contend that defendant was not allowed, nor could it obtain, a sample of the vinegar in question for analysis, and was deprived of the right to produce evidence as to the amount of solids in the vinegar; and was thus deprived of property without due process of law. The record shows that the defendant was not prevented from getting a sample of the vinegar by any person interested in the prosecution of the suit.   The record shows that the only effort it made to get such sample was a letter written to Mr. Owens, who had bought and paid for the vinegar, requesting him to return it, to which the defendant received no reply; and it does not appear that Mr. Owens had any of the vinegar left at that time.   No sample was left with the defendant by the prosecution, nor was this necessary.   *Com.* v. *Coleman*, 157 Mass. 460.

5. This statute forbids the manufacture and sale of vinegar not in compliance therewith, and persons manufacturing or selling vinegar below the standard do so at their peril. It is no defense that the person so manufacturing or selling vinegar below the standard has no knowledge that it is not within the standard prescribed. *People* v. *Snowberger*, 113 Mich. 86.

We have examined the other questions raised, but do not deem it necessary to discuss them. They relate mostly to offers of testimony which the court below ruled out, and, we think, properly.

The testimony was uncontradicted that the vinegar sold was not in compliance with the statute. The sale was admitted. The court was not in error in directing the verdict.

The conviction must be affirmed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, C. J.. did not sit.