PEOPLE *v.* SKILLMAN.

ADULTERATED JELLY—LIABILITY OF SALESMAN.

> A traveling salesman cannot be convicted of selling adulterated jelly, in violation of 2 Comp. Laws, §§ 5022, 5026, on proof merely that he solicited and obtained an order for pure fruit jelly, and forwarded the same to his house, which in response sent an adulterated article, labeled "Pure Fruit Jelly."

Exceptions before judgment from Muskegon; Russell, J. Submitted February 21, 1902. Decided March 4, 1902.

John Skillman was convicted of selling adulterated jelly. Reversed.

*Elliot O. Grosvenor* and *Smedley & Corwin,* for appellant.

*Charles B. Cross,* Prosecuting Attorney, and *George S. Lovelace,* Assistant Prosecuting Attorney, for the people.

MOORE, J. An information was filed against the respondent, which, omitting the formal parts, reads as follows:

"That one John Skillman, heretofore, to wit, on the 16th day of September, A. D. 1901, at the city of Muskegon, in the county of Muskegon aforesaid, did unlawfully offer for sale and did sell to Albert Towl a large quantity, to wit, one-quarter of a pound, of a certain article of food, to wit, a certain compound under the name of "Quince Jelly,' which was then and there adulterated within the meaning of Act No. 193 of the Public Acts of the State of Michigan of the Year 1895, as amended by Act No. 118 of the Public Acts of the State of Michigan of the Year 1897, as amended by Act No. 117 of the Public Acts of the State of Michigan of the Year 1899, in this, to wit,

that said compound was then and there made and composed in part of glucose, starch, and other substances, and was then and there colored in imitation of fruit jelly, contrary to the form of the statute."

After the testimony was all in, a motion was made asking the judge, for various reasons, to direct a verdict in favor of respondent. This motion was overruled. The case was submitted to the jury, which returned a verdict of guilty.

A great many errors are assigned. We think some of them which we shall discuss are well taken, but as the case, if ever tried again, will not present the same questions now presented by counsel, we deem it unnecessary to pass upon all the questions argued by them in the briefs.

To sustain the case of the people, testimony in substance as follows was introduced:

It was shown the respondent had for some years been a traveling salesman in the employ of Reid, Murdock & Company, of Chicago; that he solicited an order from Mr. Towl, a grocer in Muskegon; that Mr. Towl gave him an order for a case of assorted pure fruit jelly. Mr. Skillman did not have the goods with him, but reduced the order to writing in the presence of Mr. Towl at his store, and forwarded it to the house in Chicago. It is as follows:

Reid, Murdock & Co., Chicago.

Name, Albert Towl.                                   Sept. 12, '01.
Town, Muskegon.
State, Michigan.
Ship by Barry Line.                         Salesman, Skillman.
                *    *    *    *    *
1 c. P. F. Jelly, Med. Asst._____$1 00
1 c. P. F. Jell., Med. Currant_____ 1 00
60 days.

"1 c. P. F. Jelly, Med. Asst.," was explained to mean one case pure fruit jelly, medium size, assorted varieties. Mr. Towl testified Mr. Skillman claimed it was pure fruit jelly for which he took the order, and that was what he intended to buy. It was not shown that respondent

had anything further to do with the transaction than as above stated. Later a case of goods was received from Reid, Murdock & Co.; and testimony was given tending to show that a tumbler of this jelly was sold to Mr. Bennett, inspector of the dairy and food department of Michigan, and by him forwarded to the State analyst, where it is claimed upon analysis it was shown to be a mixture of fruit juice, glucose, starch, and coloring matter.

Upon the cross-examination of Mr. Towl the following occurred:

"*Q.* Did you give Mr. Skillman more than one order for fruit jelly about this time?

"*A.* Well, he had two or three orders; I think two, at least.

"*Q* Two orders?

"*A.* One of them might have been ordered by mail.

"*Q.* Now, you received two consignments of fruit jelly from the orders you had given to Mr. Skillman?

"*A.* I think so; yes, sir.

"*Q.* Upon which one of these orders did you receive this particular tumbler of jelly that you afterwards sold to Mr. Bennett?

"*A.* I couldn't say. The one that he bought was out of that order, I think. (Witness pointing to order exhibited.)"

The defense claimed that the label, "Pure Fruit Jelly," placed upon the tumbler analyzed, was put there by mistake. It was their claim that Reid, Murdock & Co. dealt in two kinds of jelly,—those made out of pure fruit and those made in imitation of pure fruit,—and that, when the imitation was sold in Michigan and certain other States, their instructions were to label them "imitation," and that these instructions were furnished in writing to their agents, including the respondent; and they offered testimony tending to prove this claim. The written instructions were also offered in evidence, but, with the testimony offered, were excluded by the court.

Among other requests offered by the respondent was the following:

"Under the undisputed evidence in this case, there is nothing to show that the respondent offered to sell any jelly in violation of any statute of this State, but, on the contrary, it is shown that respondent offered to sell strictly pure fruit jelly, and sent such an order to Reid, Murdock & Co., of Chicago, Illinois; and the charge in the information for selling and offering to sell adulterated jelly is not sustained by the evidence, and your verdict should be, 'Not guilty.'"

The judge refused to give this request, but charged the jury:

"It was recognized by the legislators, and is a matter of common knowledge, that many of the wholesalers that are doing business in Michigan are not residents of this State. So the legislature saw fit to make a law, where a man solicited the sale of pure jellies, took an order for the sale of pure jellies, and, in response to that order and offer, a different class of goods was furnished, that the party should be guilty of violating this particular law. In other words, instead of that offer or order, and the furnishing of goods delivered to the party by a party who might be a nonresident of the State, that it should relate to the man who actually made the offer,—the man who actually took the order for the furnishing of this particular article. The people claim that this is the manner in which this defendant here is liable."

This statement of the law is sought to be justified by *People* v. *Snowberger*, 113 Mich. 86 (71 N. W. 497, 67 Am. St. Rep. 449), and *People* v. *Grocer Co.*, 118 Mich. 604 (77 N. W. 315). A reference to these cases will show that the respondent in each of them admitted making the sale of the goods. In this case the respondent denies that he sold any goods coming within the provisions of the statute. Giving the only interpretation to the testimony as it appears in the record which can be fairly given to it, it shows Mr. Towl was solicited to give an order for pure fruit jelly. He gave such an order. It was reduced to writing, and in the writing the jelly was described as pure fruit jelly. As before stated, the only connection of the respondent with the transaction, as shown by the record, is the taking of an order for an article not within the

terms of the statute, and forwarding it. This does not constitute an offense. It might as well be urged that if a traveling salesman takes an order for Michigan beet sugar, and forwards a written order for such sugar, and if the house, instead of filling the order as written, sends glucose, with a label upon the package containing it calling it "Michigan Beet Sugar," the salesman would be guilty of an offense. This we do not understand to be the law. Upon the case as made, the circuit judge should have directed a verdict of not guilty. *People* v. *Howard*, 50 Mich. 242 (15 N. W. 101).

The verdict is set aside, and a new trial ordered.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.