Argued at Pendleton October 31, 1923, reversed and decree entered, January 22, rehearing denied February 26, 1924.

## S. F. WILSON v. GRACE GILLIAM, COUNTY TREASURER, ET AL.

(222 Pac. 298.)

**Counties—State may Prescribe Terms on Which It or Counties shall Voluntarily Enter Contracts.**

1. In enacting Sections 4695, 4696, Or. L., providing that no bid for the sale of corrugated culverts to county or other public corporation shall be valid unless there be filed by the bidder an accurate analysis of the metal used in the manufacture, the legislature was not exercising police power, but merely prescribing terms on which an article necessary for public use could be sold, the state having the right to prescribe terms on which it or its agencies should voluntarily enter contractual relations with another.

**Constitutional Law — State may Determine Question of Officers' Powers Unless Prevented by Constitution, and Courts Bound Thereby.**

2. If the Constitution is not contravened thereby, it is within the province of the legislature to determine the powers that may lawfully be exercised by officers of the state, or those of its political subdivisions, and restrict or limit exercise of those powers

and when enacted into public law it is binding on the courts as well as all other state officials.

**Counties—Unauthorized Acts of County Officers Impose No Liability on County.**

3. Unauthorized acts of officers of a county, in violation of plain provisions of a statute, impose no liability against the county.

**Counties—Extent of Taxpayer's Interest not Element of Right to Restrain Unlawful Payment of County Money.**

4. The extent of the property interest of a taxpayer to maintain a suit to enjoin payment of an illegal claim against a county is not an element which will sustain or defeat the suit, nor is the fact that the moving party acts from selfish motives alone sufficient to defeat the suit, where he is asserting no personal right.

**Highways—Failure of Affidavit Filed to Show Full Analysis of Material in Corrugated Culverts Fatal to Right to Recover Therefor.**

5. Notwithstanding that corrugated culverts were tested and found satisfactory by highway commission before being purchased by the officers of a county where seller failed to comply with Sections 4695, 4696, Or. L., providing that complete analysis of metal used in such culverts should be filed with the Secretary of State prior to making of bid, payment therefor cannot be made.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

REVERSED. REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Winter & Maguire,* with oral arguments by *Mr. Robert F. Maguire* and *Mr. Stephen A. Lowell.*

For respondents there was a brief over the name of *Messrs. Raley, Raley & Steiwer,* with an oral argument by *Mr. Frederick Steiwer.*

RAND, J.—Howard-Cooper Corporation, one of the defendants, sold and delivered to Umatilla County a quantity of corrugated culverts which was tested by and on the recommendation of the State Highway department was accepted by the county, and placed in use upon its public highways. At the time of the sale the statute provided that:

"No bid or proposal for the sale of corrugated culverts to any county, city, town, municipal or other public corporation, or to the state of Oregon, or any department, board, bureau, commission or officer thereof, shall be valid, and no contract for the purchase of corrugated culverts by any county, city, town, municipal or other public corporation, or by the state of Oregon or any department, board, bureau, commission or officer thereof shall be entered into unless there shall have been filed by such bidder or seller with the secretary of state prior to the making of such bid or the letting of such contract, as the case may be, an accurate and complete analysis of the metal used in the manufacture of such corrugated culverts, showing the total percentage of copper, carbon, silicon, manganese, sulphur, phosphorus, oxygen, hydrogen, nitrogen and other substances, except pure iron, contained therein, together with the weight of galvanizing per square foot with usual allowances for variations in analysis by expert metal chemists sworn to by the manufacturer of such metal; and a copy of such affidavit, together with a specification showing gage of the metal used in the various diameters of such culvert, the number, size and spacing of the rivets and fastenings, and the length of lap of the longitudinal and circumferential seams, and the type of connection to be furnished for connecting together the various sections of such corrugated culverts, signed by the seller thereof or bidder, as the case may be, shall be incorporated in such bid or in such contract, as the case may be. Section 4695, Or. L.

"The failure to file such analysis with the secretary of state, or the failure to incorporate such copy, together with such specification, shall render such bid or contract null, void and of no effect, and no warrant or order for the payment of any public moneys for the purchase of corrugated culverts shall be valid unless the provisions of this act shall have been fully complied with." Section 4696, Or. L.

Pursuant to this statute there had been filed in the office of the Secretary of State on behalf of the Howard-Cooper Corporation an affidavit which in all respects substantially complied with the statute, except the affidavit failed to show the total percentage of oxygen, hydrogen and nitrogen contained in the corrugated culverts so sold and delivered to Umatilla county.

The officers of the county recognizing the claim of Howard-Cooper Corporation as a valid claim against the county, were about to pay the same. The plaintiff alleges that he owns real property in the county, upon which he pays taxes. The testimony shows that he owns a lot at Athena, Oregon, which is appraised as of the value of $50 and that he pays an annual tax thereon of some $2 or $3. As a taxpayer of the county, and basing his right to relief upon the noncompliance by the Howard-Cooper Corporation with the requirements of the statute, plaintiff brought suit against the treasurer and other officers of the county and the Howard-Cooper Corporation, to enjoin the payment of the claim of the Howard-Cooper Corporation, which amounts to $3,442.12, and secured a temporary injunction against its payment. The cause was put at issue and a trial had, resulting in a decree in favor of the defendants and dismissing the suit.

It appears from the testimony that the coast Culvert & Flume Company is a rival concern of the Howard-Cooper Corporation and is engaged in the sale of corrugated culverts throughout the state; that these culverts are made up in Portland by Howard-Cooper Corporation from sheets manufactured by the Stark Rolling Mill Company of Canton, Ohio, and by the Coast Culvert & Flume Company from sheets

manufactured by the American Rolling Mill Company; that the American Rolling Mill Company purports to analyse its product for the purpose of determining the amount of oxygen, hydrogen and nitrogen contained therein, and that it is the only manufacturer or dealer in iron or steel in the United States making such test. It also appears that the statute in question was enacted at the instigation of the representatives of the Coast Culvert & Flume Company, and that this litigation was caused to be brought and is being financed by said company.

The learned Circuit Court dismissed the suit upon the ground that the evidence clearly shows that no reliable or accurate test can be made of the amount of oxygen, hydrogen or nitrogen contained in iron or steel, and for the reason the requirement of the statute that the total percentages of these gases must be stated in an analysis and affidavit to be filed with the Secretary of State is so unnecessary and unreasonable as to render the statute incapable of enforcement without depriving practically all manufacturers, except possibly the American Rolling Mill Company, of a market for their goods in the state; and that, as Umatilla County has received this material after it had passed the test of the state highway engineer, it ought, in all fairness, to be paid for.

That an affidavit was filed pursuant to the statute and that the affidavit stated the total percentages of copper, carbon, silicon, manganese, sulphur and phosphorus and failed to state the total percentages of oxygen, hydrogen and nitrogen in the corrugated culverts in question is undisputed; but there is a controversy as to whether this affidavit was filed before or subsequent to the sale. Because of the view which we take of the law, the decision of this latter con-

troversy is unnecessary. Under our view of the law, there is but one question necessary for decision. That question is whether the failure of the affidavit filed with the Secretary of State to show the total percentages of oxygen, hydrogen and nitrogen contained in the corrugated culverts sold to the county is fatal to the right of the Howard-Cooper Corporation to recover.

We are convinced from the testimony that there is no known test or method by which the percentages of oxygen, hydrogen and nitrogen in iron or steel can be accurately determined, and that all tests now in vogue for determining the percentages of these three gases are, by the best chemists of the country, believed to be wholly unreliable and untrustworthy, and that such tests are not made by any manufacturer except one, and by it only for advertising purposes among the uninformed; and that the presence of these three gases in the quantities usually contained in iron or steel has no known effect upon the quality, durability or value of products manufactured from iron or steel and, therefore, that an analysis purporting to show the percentages of these three gases, as required by the statute, is of no importance in affording any information of value to the state, a county, or any other civil subdivision or municipality of the state contemplating the purchase thereof; but, regardless of how unimportant, inaccurate or valueless this information may be, the statute requires it in positive and mandatory terms and provides that, unless it is stated by affidavit and the affidavit is filed, no liability results from the sale of corrugated culverts to the state or to any governmental agency or civil subdivision of the state. If the statute in question had been enacted in the exercise of the police

power of the state, then we think that the ruling of the learned circuit judge would have correctly stated the law, for it has been said:

"Each law relating to the police power involves the questions: First, is there a threatened danger? Second, does the regulation involve a constitutional right? Third, is the regulation reasonable?" 2 Bouvier's Law Dict. 692. See *People* v. *Smith,* 108 Mich. 527 (66 N. W. 382, 383, 62 Am. St. Rep. 715, 32 L. R. A. 853).

1. It is to be observed that the statute has no application to sales between private persons. It interferes with no one's right to buy or sell corrugated culverts except when the sale is to be made to the state or to a civil subdivision or municipality of the state. In enacting this law the legislature was not exercising the police power of the state but was merely prescribing the terms upon which an article necessary for public use could be sold to the state or to some governmental agency or instrumentality of the state. The right of private persons to contract is not affected by the operation of the statute unless such person seeks to enter into contractual relations with the state itself, or with one of its governmental agencies, in which case he, like all other persons, must comply with the law. It is clear that the state has as much right as an individual to prescribe the terms upon which it or one of its parts or agencies shall voluntarily enter into contractual relations with another.

2. In determining the powers that may lawfully be exercised by the officers of the state or those of its political subdivisions and in restricting or limiting the exercise of those powers, if no constitutional provision is contravened thereby it is within the sole province of the law-making body of the state and not

within the province of the courts to determine what is or what is not reasonable; and the will of the legislature upon all such matters, when enacted into a public law, binds the courts as well as all other officials of the state.

3. Whether the power of the legislature to prescribe the terms upon which public officials may lawfully act results from the doctrine of principal and agency or from the right of the state to control the acts of its own servants, the power exists unless in violation of some constitutional provision, and is as unlimited in extent as the right of a principal to control the acts of his agent when engaged in transacting the business of his principal. If, in the exercise of this legislative power over public officials, the legislature sees fit to prescribe terms which seem to be unreasonable or impossible of performance, it is not within the province of the courts to declare that because they seem to the court to be unreasonable or impossible of performance, that these limitations imposed by the legislature upon the officers and agents of the state are for that reason invalid. The courts possess no such amendatory power. Umatilla County is a subdivision of the state. It was created for political and civil purposes as an agency of the state government and it is entirely subject to legislative control, except so far as restricted by the constitution of the state: 15 C. J. 420, § 53. The defendant officers of said county derive their powers from the general laws of the state and these powers are defined by law and can be exercised only in conformity to law. Unauthorized acts done by officers of a county in violation of the plain provisions of a statute impose no liability against the county.

4. The extent of the property interest of a taxpayer to maintain a suit to enjoin payment of an illegal claim against a county is not an element which will sustain the suit if the property upon which taxes are paid is of great value and defeat it if of but little value, nor is the fact that the moving party who prompts the litigation is a designing person and acting from selfish motives in itself alone, sufficient to defeat the suit where such party is asserting no right personal to himself.

5. The culverts in question were tested and were found to be satisfactory by the state highway commission before being purchased by the officers of Umatilla County. These culverts are now in use upon the public roads of that county and are wholly unpaid for and, under the existing law, payment cannot be made. The remedy for this obvious wrong must come, if at all, from the legislature. For these reasons, the decree of the Circuit Court is reversed and a decree will be entered enjoining payment for the culverts as prayed for by the plaintiff in his complaint and without costs to the prevailing party.

REVERSED AND DECREE ENTERED. REHEARING DENIED.

BURNETT, J., not sitting.

Mr. Justice COSHOW took no part in the decision.