THE PEOPLE v. WILLIAM I. HOWARD.

*Insurance—Solicitation of policies contrary to law.*

In a prosecution for the unlawful solicitation of insurance under Act 148 of 1881, it is not material to the respondent whether the com-

| 50 | 239 |
| 70 | 501 |
| 70 | 502 |
| 50 | 239 |
| 72 | 618 |
| 50 | 239 |
| 93 | 640 |
| 93 | 643 |
| 50 | 239 |
| 106 | 483 |
| 50 | 239 |
| 107 | 424 |
| 50 | 239 |
| s15NW | 101 |
| 129 | 622 |
| 50 | 239 |
| 140 | 13349 |

pany from which the policy had been taken had ever done business in the State of Michigan.

Where there is any evidence whatever tending to sustain a charge made in any of the counts of an information, the Supreme Court will not, on review, attempt to weigh it or to say whether the jury ought or ought not to have considered it sufficient to sustain the charge.

A comparison of evidence by offsetting that which is given for one party against that which is given for his adversary and subtracting one from the other, is weighing the evidence, and is solely for the jury.

A court of review ascertains whether there is any evidence to sustain a verdict by examining that which is most favorable for the prosecution and discarding all the rest.

An exception to a verdict for want of evidence should be sustained if the appellate court finds that there is a total want of evidence on any essential point.

Act 148 of 1881 makes it unlawful for any person as "agent" to solicit business in Michigan for an insurance company without obtaining the certificate of authority from the Commissioner of Insurance provided for by Comp. L. § 2987 which makes the term "agent" include any acknowledged agent or any other person who shall in any manner aid in transacting the insurance business of any company not incorporated by State law. *Held* that evidence that one man filled out for another a blank application on which insurance was effected by a policy issued by a company which he assumed to represent, fairly tended to show that he was acting as agent for the company.

In a prosecution for the unlawful solicitation of insurance in a foreign company *it seems* that it is unnecessary to introduce in evidence the written application for insurance if that is in the possession of the company and beyond the jurisdiction of the court.

The prosecution in a criminal case cannot take proofs outside of the State, though the respondent may do so.

A trial court, in charging the jury in a criminal case, cannot be limited to a part of the evidence and required to instruct them that if they find the facts to be as stated therein, and that nothing farther was done, they must acquit; the court is entitled to go farther and instruct the jury that if they find the respondent did as the evidence tends to show, he would be guilty.

A charge must be examined as a whole; its correctness cannot be tested piecemeal.

Act 148 of 1881 punishing the solicitation of fire and inland marine insurance in Michigan by persons who have not obtained authority to do so from the Commissioner of Insurance, applies to the agents

of mutual insurance companies organized in other States, as well as to other classes of foreign companies.

The public policy of a State in regard to particular matters is deducible from the general course of its legislation relating thereto.

Foreign corporations organized to do business not open to citizens generally cannot carry on business in Michigan unless express or implied permission is given them to do so.

Exceptions before judgment from Kent. (Montgomery, J.)   Jan. 18.—Feb. 27.

INFORMATION for unlawful solicitation of insurance.   Respondent was convicted.   Exceptions overruled.

Attorney General *Jacob J. Van Riper* for the People.

*Thomas J. O'Brien* for respondent.

MARSTON, J.   This case comes up on exceptions after verdict and before judgment.

The prosecution was commenced for an alleged violation of Act 148 of the Session Laws of 1881, p. 140, being entitled " An Act to prevent the soliciting or issuing of unauthorized fire or inland marine insurance policies in this State."

The first count in the information charges the respondent with being an agent and solicitor of the Western Manufacturers' Insurance Company of Chicago, Illinois, and that he did, as such agent and solicitor, unlawfully transact and solicit business within the State of Michigan for said company, and did unlawfully solicit and take the application of William Harrison—the said company not having procured authority·according to the laws of this State.

The second count charges the respondent with procuring insurance, and the third with unlawfully taking the application of Harrison, &c.

Counsel for respondent admit it was proved that the insurance company referred to was and is a mutual insurance company, having no shares of capital stock; that it was incorporated by special charter granted by the General

Assembly of the State of Illinois; that neither the respond-
ent nor the company had procured or received the certificate
of authority required by Sec. 23 of the Act of 1869, and as
required by said Act of 1881.

The several questions raised in the brief of counsel for
the respondent will be considered in their order.

*First.* It was not proved that the company was, when
that policy was issued, or ever had been, doing business in
the State of Michigan, nor that it had ever or in any way
or manner transacted or solicited business within the State
of Michigan, and that the evidence did not sustain the
charge made against respondent in either of the counts in
the information.

The first part of the above proposition we may, for the
purpose of the present case, fully admit; yet we do not see,
nor has any attempt been made by counsel to point out,
what favorable result to the respondent can follow there-
from.   Should the company hereafter make an application
for leave to do business in this State, if such leave could be
granted at all, then under other provisions of the statute the
above question might become material.

As to whether the evidence introduced was sufficient to
sustain the charge made, we need but say that if there was
evidence tending to sustain the charge made in either of
the counts, then this Court will not attempt to weigh the
same and say whether the jury ought or not to have con-
sidered it sufficient.   In testing this case we are not required
to take that which respondent relies upon and that which
would tend against him, and from a comparison thereof
determine which was the stronger and better, or, deducting
the one from the other, say what, if anything, was left.
This would be but a weighing of the evidence and was
entirely within the province of the jury.   Nor are we to
take the evidence in the order, question and answer, in
which it was given, but finding it where we may, and put-
ting what was most favorable to the prosecution together,
and discarding all other, can this Court say it fairly tended
to establish the charge made?   If so, then the verdict of the

jury in this Court must be considered as final. If, however, we find a total want of evidence upon any essential point, then it becomes a clear duty to sustain the exceptions taken.

We might content ourselves with saying that the evidence did, in our opinion, tend to establish the charge, but owing to the importance of this case, we will quote some portions of the evidence bearing upon this question.

It is not clear from the evidence from what source the printed blank form of application was obtained by Harrison; it would seem to have been one in general use, not, issued by this company. Mr. Harrison, the person to whom the policy of insurance was issued, [was] examined and testified as follows:

Q. Do you know Mr. Howard, the defendant?
A. I do; yes, sir.
Q. How long have you known him?
A. Well, I think about the first acquaintance I had with Mr. Howard was last January: I saw him before that.
Q. What was his business with you last January?
A. Well, as near as I can remember, he filled out a blank application.
Q. What was the application?
A. An application for insurance.
Q. Whether or not upon that application any insurance was effected?
A. It was. [The policy in question from this company.]
Q. Where did that conversation occur?
A. At my office.
Q. Well, tell us what was said?
A. Well, I could hardly tell what was said. The leading points, perhaps, were that I asked Mr. Howard the mode of operation of the company represented.
Q. What companies did he represent?
A. This one company there.
Q. What was it?
A. The Western Manufacturers' Mutual.
Q. Go ahead.
A. Mr. Howard answered my questions. I cannot remember what these questions were.
Q. What was your question,—the substance of it?
A. Well, I was very much interested in the protection that that company gave to the insured, and the amount it cost to insure.

Q. What did he say as to the amount it cost to insure?

A. About one-half per cent.   *   *   *   That application was filled out, as near as I can recollect, at that time in January when Mr. Howard was in my office.

Q. You say that this policy was issued to you in pursuance of that application?

A. Yes sir.   *   *   *

Q. Do you recollect what became of the application after it was signed?

A. My recollection is it was handed to Mr. Howard.

Q. Was it for insurance in this same company?

A. Yes sir.

Q. And this [policy] you received by mail shortly afterwards?

A. Yes sir.   *   *   *

Q. Did you give any premium note?

A. Yes sir.

Q. When was that given?

A. That was given at the time of the application.

Q. You signed it at the time you made the application?

A. Yes sir.

Q. And they drew on you for the cash premium?

A. For the cash premium; yes sir.

Section 23 of the Act of 1869, (1 Comp. L. § 2987), which requires foreign companies to do certain acts, appoint agents, obtain authority, etc., defines whom the term "agent" shall include, as follows: "The term agent or agents, used in this section, shall include any acknowledged agent, surveyor, broker, or any other person or persons who shall in any manner aid in transacting the insurance business of any insurance company not incorporated by the laws of this State."

In view of this provision, and of section 1 of Act 148 of the Laws of 1881,* we have no doubt whatever but that the evidence quoted did tend to establish the charge made.

---

* SECTION 1. *The People of the State of Michigan enact,* That it shall be unlawful for any person or persons, as agent, solicitor, surveyor, broker or in any other capacity, to transact, or to aid in any manner, directly or indirectly, in transacting or soliciting within this State, business for any fire or inland navigation insurance company or association, not incorporated by the laws of this State, or to act for or in behalf of any person or persons, firm or corporation. as agent or broker, or in any other capacity, to procure, or assist to procure, a fire or inland marine policy or policies of insurance on property situated in this State, in any com-

Howard was not and had not been employed by Harrison as a clerk or otherwise, and they had not even a previous acquaintance. Howard went to Harrison's office in January, 1882, representing the Western Manufacturers' Insurance Company of Chicago. The conversation then had between these persons was in reference to insurance. Harrison asked Howard the mode of operation of this company which he represented. The desired information as to cost of insurance was given by Howard, who then filled out an application. A premium note was then signed by Harrison, the application as filled out was handed to Howard, which in some way passed to the insurance company, and acting thereon a policy of insurance was issued by the company and received by Harrison through the mail afterwards.

Might not the jury, then, from this evidence have found that Howard, a comparative stranger to Harrison, was not a wholly disinterested actor, acting a purely benevolent part? He was familiar with the company's rates and methods of insurance. Was such knowledge common to men in general, and if not, how, from what source, and under what circumstances did Howard obtain his information? How came Howard to be at Harrison's place of business on this particular occasion, and by what chance did the conversation happen to open upon the subject of insurance with this company? How came Howard to fill out the application? What peculiar qualifications did he possess,—a stranger to the property to be insured,—over Harrison for such a purpose? Why was the completed application handed to Howard, when it might as easily have been sent to the company by Harrison, and thus have saved Howard the trouble and expense, slight though it may have been, of so doing?

pany or association without this State whether incorporated or not, without procuring or receiving from the commissioner of insurance the certificate of authority provided for in section twenty-three of an act entitled "An act relative to the organization of fire and marine insurance companies transacting business within this State," approved April third, eighteen hundred and sixty-nine, as amended. Such certificate of authority shall state the name and location of the company or association, and that it has complied with the laws of this State, regulating fire, marine, and inland navigation insurance, and the name of the duly appointed attorney in this State on whom process may be served.

Did Howard, in sending forward this application, as it may fairly be inferred he did, act as the agent of Harrison, of the company, or for neither? The company recognized the act and issued the policy; may it not thereby have "acknowledged" Howard's action in the premises? These were all pertinent questions to be submitted to the jury, and in the absence of all explanation they may have drawn the most natural possible conclusion therefrom. We have no doubt but that this evidence did tend to show, and that the jury was justified in finding therefrom, that Howard was acting as the agent of this company, and that as such he did unlawfully transact and solicit business for it in this State and did procure the same.

What we have thus said sufficiently disposes of all questions raised as to the effect of what took place between Harrison and Howard.

*Second.* It was argued that the court was not warranted by the preliminary evidence in admitting the policy in evidence; that the written application upon which the policy issued should have been introduced.

It appears that the application filled out by Howard was by him sent to the company in Chicago, Illinois. It was, as to the People, beyond the jurisdiction of the court. No process could be issued on their behalf which would compel its production, nor could the People take proofs in Illinois to be used on the trial. This the respondent could, but the People could not do.

*Third.* While we may concede that the sixth request to instruct the jury, in so far as it recited or purported to state the evidence, was correct, yet it did not recite all bearing upon the case, and the court cannot be required to recite a part in the instructions given, and charge that if they find such to be the facts, and that nothing else or farther was done, then they must acquit. The court, in giving the instruction, very properly went farther and directed them that if they should find that the respondent did certain things, he would be guilty of a violation of the statute. This Court has repeatedly held that the entire charge as given must be

examined, and that its correctness cannot be tested by taking particular parts thereof.

*Fourth.* It was strongly urged that the acts referred to did not apply to mutual, but only to stock insurance companies.

The argument advanced in favor of this position briefly and in substance is that the Acts of 1869 and 1881 do not, in terms, prohibit insurance companies of other states, nor their agents, from doing business within this State, and that the Act of 1881 does not make it criminal for such companies or their agents to do an insurance business within this State ; that the crime consists in doing such business without first procuring and receiving from the insurance commissioner the certificate of authority provided for in § 23 of the Act of 1869 as amended ; that insurance companies organized on the mutual plan, under the laws of other states, are not prohibited from doing an insurance business within this State, either by the terms or by the spirit of these acts, and for this reason : that they are not required to and cannot obtain the certificate of authority from the insurance commissioner to enable them to do business; that no authority is conferred upon the insurance commissioner to entertain an application of any insurance company organized under the laws of other states on the mutual plan, and grant them the certificate referred to. Such is the argument advanced by counsel.

Admitting for the purpose of this case, but which we do not pass upon, that mutual insurance companies organized under the laws of other states cannot obtain the certificate of authority provided for in section 23 of the Act of 1869, and that the Commissioner has no authority to issue such a certificate, yet it does not, in our opinion, follow that the respondent could not be legally convicted of the offense charged.

Corporations organized under the laws of other states to engage in and carry on business not open to citizens generally, cannot carry on business in this State except permission, either express or implied, is given them so to do. *Thomp-*

*son v. Waters* 25 Mich. 214 ; *Home Ins. Co. v. Davis* 29 Mich. 238.

Even if we might indulge in the presumption that the insurance company referred to might in the absence of all legislation carry on business in this State, yet that it may be prohibited from so doing is very clear, and this may be found in the direct enactments of the Legislature of this State or by the public policy of the State deducible from the general course of legislation pertaining to such matters. *Christian Union v. Yount* 101 U. S. 356.

Whether we make a careful and critical examination of the insurance legislation in this State or a more casual one, we can arrive at but one conclusion, viz. : that all foreign insurance companies, however formed or created, associations, corporations, partnerships and individuals, shall not directly or indirectly take any fire risks or transact any business within this State unless authorized so to do as provided in section 23 of the Act of 1869. This is the settled policy of this State, and some of the reasons therefor were given in *American Ins. Co. v. Stoy* 41 Mich. 401-2-3.

If this company does not come within the provisions of our legislation so that the Commissioner of Insurance can give the requisite authority to do business in this State, then the company simply has no authority and can derive none under existing laws to take risks in this State. And as the company cannot well be reached so as to render it amenable to the statutory penalty, those who attempt to represent the company or aid it in evading our laws must suffer the consequences. The fact that the company cannot obtain the authority gives it no right, and the Act of 1881 was designed to be and is broad enough to reach the present case.

The clearly expressed intention of that act was to entirely prevent unauthorized companies from taking any risks in this State. This was and has been for some time the settled policy of the State, as expressed by legislation, and for the protection of the citizens of the State and companies submitting to our laws and paying the State taxes. The

statute is intended to be prohibitory in its character. The policy is wise and as such should be enforced.

We discover no error in the record, and it must be so certified, and that the court proceed to judgment.

GRAVES, C. J. and COOLEY, J. concurred.