# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DOMINIQUE ARNETT RAMSEY, JR.,

        Defendant-Appellee.

UNPUBLISHED
April 24, 2018

No. 334614
Saginaw Circuit Court
LC No. 15-041847-FC

---

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

RONAYNE KRAUSE, P.J. *(concurring)*

I concur in the result arrived at by the majority. I write separately because I believe the outcome of this appeal turns significantly on the surveillance video, and I therefore believe it calls for more explication of *why* we find the jury could have found the video inculpatory. The core issue is whether it is possible to determine whether the driver of the Jeep got out when it parked and went into the house, thereby breaking the link between whoever drove the Jeep during the shooting and the driver, defendant, when the Jeep was subsequently pulled over. After carefully scrutinizing the video myself, frame by frame, I conclude that either it shows only the passenger getting out and back in, or at least enough ambiguity that the jury was entitled to make its own determination. As a consequence, I agree with the majority that the jury had a reasonable basis for concluding that the driver during the shooting was the same person as the driver when the Jeep was stopped.

The video itself is, admittedly, of poor quality. Its total screen resolution is 960 by 480 pixels, and the portion of the video depicting the Jeep parking at the house is approximately one frame per second. Although the Jeep is in plain view and there appear to be no obstructions to seeing the space between the Jeep and the house, that view is from across a field, and the Jeep is approximately 7 pixels high. In the real world, unlike the world of certain entertainment shows, one cannot simply push an "enhance" button to conjure up a better image. Nevertheless, I find enough data with which to work.

I count seven relevant frames after the Jeep pulls in to the driveway, with the passenger side facing the camera:

    1:24:   Individual opens the passenger side door

    1:25-1:26: That individual appears to be heading toward the back end of the car

-1-

1:27: Passenger door is now closed, nobody between the car and the camera, nothing that obviously looks like a person present

1:27: Individual dressed in white on the far side of the car; by comparing this and the prior frame it appears that they had actually been on the far side of the car in the previous frame and is moving in the direction of the house

1:28: Individual is now well in front of the car in the direction of the house

1:29: Individual now appears to be at the front door of the house

1:30: Individual now not apparent

And nine additional frames appear relevant when the Jeep leaves:

3:52: Jeep sitting in the driveway, no people readily apparent

3:53: What appears to be a single individual emerges on the porch of the house

3:54: Individual apparently standing at the front of the Jeep

3:55: No apparent change from previous frame

3:56: Individual getting into passenger side of the Jeep

3:57: Jeep passenger-side door in the process of closing

3:58: Jeep passenger-side door now closed

3:59: No apparent change from previous frame

4:00: Jeep in the process of pulling out

Thus, there is very little in the video with which to work. Nevertheless, I believe it is sufficient.

Later in the video, when the Jeep is pulled over, it is readily apparent that defendant, the driver, was shorter than the top of the Jeep. Because the driver side of the Jeep was on the opposite side from the camera, defendant would not have been visible while getting into or out of the Jeep. However, there is a clear view of the path between the Jeep and the front door of the house, and at no time was more than one person visible in that space. At one frame a second while people were running, it is *possible* that a second person, if any, *might* not have ever appeared in the recording. Nevertheless, there is nothing in the video that could constitute actual evidence of a second person getting out of the Jeep, and the brief time between the passenger getting in and the Jeep pulling out strongly suggests that the Jeep remained running the entire time it was in the driveway. In short, because of its technical limitations, the video does not completely preclude the possibility that two people got out and then back in. However, the video does not in any way support such an occurrence, and it is fairly strongly suggestive of only one person, the passenger, exiting the vehicle and getting back in.

As a general matter, the jury is usually entitled to choose at whim what evidence it wishes to accept and reject, limited by a prohibition against speculation and drawing conclusions that would require evidence to be invented. *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). Clearly, that freedom is not totally unbounded, and the courts will step in at some point if it becomes too apparent that no rational trier of fact could draw a particular conclusion from a particular array of evidence. I find no reason to do so here. It is conceivable that a different outcome would be warranted if the video unambiguously showed both the driver and passenger getting out of the Jeep, but we need not address that particular hypothetical at this time. As the majority states, the jury was able to view the video for itself and draw its own conclusions, which could reasonably include the conclusion that the driver of the Jeep never left the vehicle between the shooting and when it was pulled over.

I therefore join in the majority's resolution of this appeal.

/s/ Amy Ronayne Krause