# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES EVERETT FRISON,

        Defendant-Appellant.

UNPUBLISHED
November 27, 2018

No. 331457
Eaton Circuit Court
LC No. 15-020116-FH

AFTER REMAND

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant previously appealed by right his conviction, after a jury trial, of embezzlement of property worth between $50,000 and $100,000, MCL 750.174. The trial court sentenced defendant as a habitual offender, fourth offense, to 9 to 25 years' imprisonment, MCL 769.12. We remanded this matter to the trial court for a *Ginther*[1] hearing. *People v Frison*, unpublished per curiam opinion of the Court of Appeals, issued December 5, 2017 (Docket No. 331457). Notwithstanding the trial court's issues with managing the hearing and trial counsel's change of heart after being advised that a grievance would be filed against him, it clearly supported trial counsel's original admission, as we discussed in our previous opinion, that he had been ineffective and failed to introduce exculpatory evidence. We vacate defendant's conviction and remand for a new trial.

## I. BACKGROUND

As we stated in our prior opinion:

> The property in question is a Komatsu brand excavator owned by a company owned by the complainants, Barbara and Kees Vandervelden. The complainants had hired defendant to move seven pieces of equipment, including the Komatsu, in a specified order. During the transport, problems arose, the exact

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-1-

nature of which is disputed between defendant and the complainants. The Komatsu did not arrive at its intended destination and was instead found, after the complainants had already reported it stolen and collected on an insurance claim, somewhere in Lansing.

* * *

> This case is essentially a "he said, she said" case, with defendant claiming that the complainants knew of the location of their property and that he did not allow anyone to use it, and with the complainants claiming to the contrary that defendant professed to having delivered the Komatsu excavator as instructed. . . . We note that defendant's trial counsel *actually admitted* that he was ineffective. Ordinarily, this Court defers to trial counsel's judgment and avoids "second guessing" tactical decisions and strategies, particularly with the benefit of hindsight. *Harrington* [*v Richter*], 562 US [86,] 105-111[; 131 S Ct 770; 178 L Ed 2d 624 (2011)]. Here, however, trial counsel himself obviated such concerns. Specifically, trial counsel made no attempt to secure telephone records that would have supported defendant's testimony and contradicted the complainants' testimony; and he also failed to secure evidence that defendant had a trailer repaired, again consistent with defendant's testimony and contrary to the complainants' testimony. Additionally, defense counsel admits that the owner of the repair shop had an actual memory of defendant and the trailer but defense counsel did not subpoena him. [(*Frison*, slip op at pp 1, 2-3).]

We note that defendant's entire defense was that he had encountered technical problems transporting the Komatsu and eventually left it in Lansing with the complainants' full awareness, albeit not their pleasure. To reiterate, defendant contended that certain records would have provided concrete evidentiary support for his position and undermined complainants' credibility, had counsel bothered to secure and admit those records.

## II. LEGAL STANDARD

To obtain a new trial on the basis of ineffective assistance of counsel, a defendant must overcome the strong presumption that counsel was effective and "show that counsel's performance fell below an objective standard of reasonableness." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). Defendant must also show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. A mere possibility of a different outcome is insufficient, but the probability of a different outcome need only be " 'sufficient to undermine confidence in the outcome.' " *Harrington*, 562 US at 104, quoting *Strickland v Washington*, 466 US 668, 693-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). At the conclusion of the *Ginther* hearing, the trial court found that counsel's performance had been objectively deficient, but that defendant had not established the requisite prejudice.

## III. OBJECTIVE REASONABLENESS

We conclude that counsel's testimony supports the trial court's finding that his performance fell below an objective standard of reasonableness.

Our dissenting colleague refers to the first prong of a *Strickland* analysis being "assumed." We assume nothing. Counsel's opinion that he had been ineffective played a significant role in obtaining a *Ginther* hearing. Having now held the hearing, our analysis of counsel's effectiveness rests on the evidence from that hearing. We have no interest in revisiting the merits of our prior unanimous opinion. Rather, we are interested in counsel's explanation of why he failed to secure the records and how he would have used them at trial. Specifically, counsel admitted that he "anticipated that the two owners of the business would testify truthfully at trial," and that he realized during complainants' testimony that certain receipts and phone records "may have been used to impeach the testimony of the business owner or owners who owned the excavator."

It should have been clear from the outset that defendant's credibility was of paramount importance, especially given the statements defendant made to police, so any objective evidence tending to corroborate defendant's theory at trial would have been critical. Likewise, any evidence tending to undermine the credibility of the complainants would have also been clearly beneficial. Under the circumstances, we do not believe it was effective performance or a sound strategy to rely on complainants' complete honesty. Counsel's testimony makes it clear that he would have minimally used the records to impeach the complainants, if he had the records available. We therefore agree with the trial court's finding that counsel's performance fell below an objective standard of reasonableness. Thus, the first prong of the *Strickland* evidence is satisfied by the evidence, not by assumptions.

Finally, we note that counsel's opinion of his own efficacy carries significantly less weight when we have the benefit of evidence. Our dissenting colleague provides an accurate excerpt from counsel's testimony in which counsel opined that an average attorney would not have anticipated a need for the records, his standard practice would not have included obtaining the records, and he would not do anything different in a similar case. This *seems* directly contrary to counsel's prior opinion that he had been ineffective. In context, however, the testimony quoted by our dissenting colleague followed a colloquy during which the prosecutor advised counsel that he would be *required* to file a grievance. Our dissenting colleague would not describe this as a "change of heart." We disagree, and we do not believe counsel's change of heart after such an exchange holds any persuasive or probative value.

## IV. PREJUDICE

We appreciate that prejudice is a somewhat closer question. However, the "reasonable probability" standard is not a high one. Whether a deficient performance *did* affect the outcome of a trial will always be speculative to some degree, simply because the jury has enormous latitude to pick and choose what evidence to believe. See *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883). Therefore, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 US at 694. "To find prejudice, a court must conclude that there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *People v Pickens*, 446 Mich 298, 312; 521 NW2d 797 (1994), quoting *Strickland*, 466 US at 695. Additionally, the focus for determining prejudice includes fairness and reliability, not merely outcome. *Lockhart v Fretwell*, 506 US 364, 369-370; 113 S Ct 838; 122 L Ed 2d 180 (1993).

The evidence presented at the *Ginther* hearing in this case was not, as our dissenting colleague extensively discusses, uniformly helpful to defendant. Nevertheless, the hearing clearly revealed that the records and receipts previously alleged to exist did, in fact, exist. Although the record is unclear whether trial counsel would have presented those records in defendant's case-in-chief, it *is* clear that trial counsel was aware that they would have been helpful to impeach complainants' testimony. Complainants' testimony was, similar to that at trial, again conflicting and strongly suggestive of confusion regarding the day to day operations of their business. Furthermore, the jury's inquiry into whether such records existed reflects that, at a minimum, the jury would have seriously considered those records had they been introduced, and that the jury was concerned about corroborating the various witnesses' testimonies. In a case that depended heavily, albeit not exclusively, on the relative credibilities of the witnesses, we cannot disregard as trivial any evidence that would undermine *any* part of a witness's testimony. The case turned greatly on which witnesses were "believable" altogether.

We are aware that defendant had already done extensive harm to his own credibility by the time of trial. Defendant initially admitted guilt to the police, and then contended that he lied. We are also aware that defendant's conviction did not rest *solely* on a testimonial credibility contest between himself and a complainant. Nonetheless, defendant's credibility *was* critical, and any evidence that functions to seriously discredit or impeach the testimony of the complainants is crucial, given the relative lack of direct evidence. Furthermore, we disagree with the prosecutor's contention that the evidence would not have proved much: *inter alia*, there were *two* excavators moved, and the missing evidence—which at least one juror specifically asked about—tends to support defendant's otherwise-uncorroborated contention about when the Komatsu was moved. The complainants specifically denied knowing of any trouble defendant had moving the Komatsu or of the person to whom defendant allegedly improperly rented the Komatsu; evidence adduced at the *Ginther* hearing showed that they *were* aware of difficulties in moving at least one of the excavators. The complainants also displayed confusion and miscommunication between each other regarding the affairs of their business.

In short, the new evidence bolsters defendant's credibility by providing extrinsic corroboration of his testimony, and it undermines the credibilities of the complainants. In a case that turns to a great, albeit not exclusive, extent on the relative credibility of each of the witnesses, the evidence was material to the *entirety* of the outcome, not just the specific facts the evidence narrowly supported. Therefore, we hold that the missing evidence has a reasonable probability of affecting the outcome of the trial, and that its absence rendered defendant's trial unfair and unreliable. We conclude that a different result would have been reasonably probable if counsel had secured and utilized the missing records.[2]

---

[2] Our dissenting colleague accurately notes that, in a peremptory order and without any discussion or clarification, our Supreme Court has stated that it is "incumbent upon the defendant" to establish at a *Ginther* hearing that the proffered evidence would be "materially favorable" at a new trial. *People v McKeever*, ___ Mich ___; 918 NW2d 526 (2018). Such peremptory orders are binding to the extent they can be comprehended, although such comprehension may entail reference to other opinions if necessary. See *Woodring v Phoenix Ins*

## V. CONCLUSION

We vacate defendant's conviction and remand for a new trial, and we decline to consider the other issues raised on appeal as unnecessary. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause

---

*Co*, ___ Mich App ___, ___; ___ NW2d ___ (2018), slip op at p 3. It therefore does not escape our attention that in *McKeever*, the evidentiary hearing in that case simply generated no clarity, evidence, or any knowledge whatsoever about what testimony a missing witness would have provided. *People v McKeever*, unpublished per curiam opinion of the Court of Appeals, issued May 25, 2017 (Docket No. 331594). Therefore, the set of facts in *McKeever* is completely distinguishable from what occurred in the present case. Thus equipped with an understanding of the context underlying our Supreme Court's statement, we do not think it was intended to alter Michigan's application of the standards laid out in *Strickland*.