*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERNEST REGINALD-FREDRICK WALTON,

Defendant-Appellant.

UNPUBLISHED
August 29, 2019

No. 343148
Kent Circuit Court
LC No. 17-005830-FH

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of assault with intent to inflict great bodily harm less than murder (assault GBH), MCL 750.84, and his sentences for each of these convictions. The trial court sentenced defendant as a fourth offense habitual offender, MCL 769.12, to 12 to 60 years' (144 to 720 months') imprisonment. We affirm.

## I. BACKGROUND

Defendant participated in a drunken brawl during a local block party. During the assault, defendant punched and cut victims KA, LJ, and EJP with some type of sharp object, possibly a box-cutter. All three victims had been drinking heavily. Also present was witness BNJ, who had not been drinking that night and saw defendant cut LJ and EJP, but not KA. Police officers arrived at a chaotic scene, administered first aid, and took statements from victims and witnesses. In the aftermath, EJP stated that she was unsure who had hit her, and BNJ stated that there was another, unidentified man at the scene wielding a small weapon and fighting with people. Other eyewitnesses at the scene gave conflicting testimony. Police never recovered the alleged weapon, but the doctor who treated the victims at the hospital opined that their wounds had been caused by a blade rather than a fist or a fall. During the ensuing police investigation, EJP identified defendant in a photographic lineup, and BNJ confirmed that she saw defendant strike and cut both EJP and LJ. All witnesses knew defendant by sight and had interacted with him before.

-1-

At trial, defendant's theory of the case was that the witnesses were not credible, and there was insufficient evidence of his identity. Defense counsel elicited testimony regarding the drunkenness of all three victims and pointed to their inconsistent interview statements as evidence of their lack of credibility. To cast further doubt on the witnesses' recollection of the events, defense counsel pointed to the conflicting testimony, the presence of another unidentified and armed man at the scene to suggest that he was the one who struck and cut the victims, and the confusion of the witnesses caused by the chaos of the scene. Defendant was charged with assault GBH as to all three victims; the jury convicted defendant as to EJP and LJ, and it acquitted him as to KA. At sentencing, the trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 12 to 60 years' (144 to 720 months) imprisonment. This was within the applicable guidelines range of 38 to 152 months.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel was ineffective for failing to retain an expert witness in the field of eyewitness testimony and memory. The sole theory presented by the defense was faulty identification. Defendant concedes that counsel did call the relevant police officers for the purposes of witness impeachment, but he argues that counsel's failure to utilize an expert in the field of eyewitness identification was objectively unreasonable. We disagree.

"The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008). "To establish that his or her lawyer provided ineffective assistance, a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different." *People v Anderson*, 322 Mich App 628, 611; 912 NW2d 607 (2018). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). "[E]ffective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *Id*. (quotation marks and citation omitted). Failure to "attempt to consult an expert with the scientific training to support the defendant's theory of the case" may fall below "an objective standard of reasonableness." *People v Ackley*, 497 Mich 381, 383; 870 NW2d 858 (2015). However, defense counsel was not ineffective here.

"Trial counsel's conduct in this regard is presumed to be a permissive exercise of trial strategy." *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999). Although defense counsel can be ineffective by not thoroughly investigating the possibility of calling an expert, this is generally limited to technical matters outside defense counsel's education or experience. See *Ackley*, 497 Mich at 391 (collecting cases that recognize ineffective assistance of counsel in failing to consult experts). Otherwise, reliance on cross-examination is not per se below an objective standard of reasonableness. *Cooper*, 236 Mich App at 658.

Notably, this case turned on eyewitness identification from individuals who knew defendant before the incident. This is a differentiating factor that we may consider when evaluating the effectiveness of counsel's decision not to consult with or call an expert witness. It seems likely that trial counsel chose not to call an eyewitness or memory expert because of the

concern that the witnesses' prior familiarity with defendant may be beneficial to the prosecution. Defendant has not highlighted any aspect that overcomes this presumption. *Cooper*, 236 Mich App at 658 (holding that where defense counsel "elicited apparent discrepancies," the presumption of permissive trial strategy is not overcome). Rather, defense counsel reasonably chose to cross-examine the prosecution's witnesses, to point out the discrepancies of their stories, to highlight their drunkenness at the time, and to impeach their credibility through these factors. Defense counsel called the police officers to the stand, who offered further discrepancies between the witnesses' statements immediately after the incident and later statements. Both officers who responded also explained the chaos of the scene.

Also notably, this case is not a "battle of the experts" where the prosecution has presented a "technical subject matter most critical to the case." *Ackley*, 497 Mich at 392, 397 (quotation marks and citation omitted). The prosecution presented only nonexpert eyewitnesses. *Cf.*, *id.* at 395-397. Defendant's theory of misidentification due to alcohol, stress, distraction, and time was suited to a strategy limited to directly undermining the eyewitnesses' actual, not theoretical, recollections through cross-examination. No expert testimony existed to be rebutted, and "[t]rial counsel may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as stating only the obvious: memories and perceptions are sometimes inaccurate." *Cooper*, 236 Mich App at 658. Defendant does not identify any technical issues that should have alerted defense counsel that these factors required expert bolstering. See *Ackley*, 497 Mich at 392, 397. Therefore, defense counsel's decision to not utilize an expert did not fall below a reasonable standard.

In any event, defendant has not established prejudice. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Russel*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (alteration in original). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citations omitted). Defense counsel's failure to call an expert did not deprive defendant of a substantial defense.

Defense counsel aggressively challenged the identification of defendant during cross-examination. It is not reasonably probable that the addition of an expert to this case would have bolstered this strategy, and it may have actually harmed defendant's case. As noted, this case involves eyewitness identification from individuals who knew defendant previously, not from strangers. It is possible that an expert witness may have confirmed to a jury that the witnesses' familiarity with defendant and the broader consistencies between their testimonies overcame the deficiencies in their recollections. A defendant may be harmed when no expert is called or consulted in confronting highly technical issues where the prosecution calls its own experts, but the prosecution's testimony here did not "appear uncontested and overwhelming." *Ackley*, 497 Mich at 397. Therefore, even if trial counsel failed to consult with an expert in the area of memory and eyewitness testimony, and even if this failure fell below a reasonable standard, which it did not, this failure does not undermine confidence in the outcome. *Id.* Defense counsel was not ineffective, and defendant was not prejudiced.

In his Standard 4 brief,[1] defendant argues that he received ineffective assistance because trial counsel gave him poor advice. Specifically, trial counsel expressed to defendant the belief, consistent with the strategy pursued at trial, that the prosecution's witnesses would be found not credible due to their intoxication and inconsistent statements. Defendant contends that he would have accepted a plea offer instead of going to trial if he had been "properly advised" that "the witnesses were in fact creditable [sic]." The record reflects that several plea deals were offered to defendant. Defendant only identifies one plea deal that he claims he would have accepted.[2] Specifically, on the first day of trial, defendant rejected a plea deal that would have fixed his minimum sentence guidelines range at 38 to 152 months' imprisonment,[3] with a promise by the trial court to impose a sentence no higher than the midpoint of that range. As noted, defendant was ultimately sentenced to 144 to 720 months' imprisonment.

Defendant points out that the witnesses knew him personally, one of the witnesses was sober, and the sober witness observed defendant strike one of the victims with a blade. However, defendant could not have been unaware that the witnesses knew him personally, or, having been present for the preliminary examination, that they placed defendant at the scene of the crime. Whether defendant was aware by the eve of trial that BNJ had been sober and saw defendant cut two of the victims is less clear. Nevertheless, the effectiveness of counsel is not evaluated with the benefit of hindsight. See *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). An unsuccessful strategy is not necessarily an unreasonable strategy. *People v Reed*, 449 Mich 375, 396; 535 NW2d 496 (1995) (BOYLE, J.); *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). We are not persuaded that it was ineffective for counsel to believe, under the circumstances, that a reasonable trial strategy would be to undermine the credibility of the victims and witnesses.

III. SUFFICIENCY OF THE EVIDENCE

Next, defendant challenges the sufficiency of the evidence of his identity. Defendant specifically challenges the credibility of the witnesses by citing their drunkenness, the chaos of the scene and the fight, and the inconsistencies between their initial interviews and their later trial testimonies.

> [W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

---

[1] Supreme Court Administrative Order 2004-6.

[2] We note also that defendant rejected several other plea offers that would have guaranteed even shorter sentences throughout the proceedings, which somewhat undermines his contention that he would certainly have accepted the final deal.

[3] Defendant specifies a "plea on the record to 38-158 months," which we presume to be a typographical error because we cannot find any other plea deal in the same general range, and defendant does not further identify which deal he complains of rejecting.

[*People v Nowak*, 462 Mich 392, 399-400; 614 NW2d 78 (2000) (quotation marks and citation omitted).]

"The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* at 400. "Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime." *Id.* (quotation marks and citation omitted). "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

There was clearly sufficient evidence introduced at trial to convict defendant of assault GBH. Positive witness identification may be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Three separate witnesses positively identified defendant as having been present at the scene and as having struck the victims. All three victims testified in this case, and each was uniquely suited to determine the identity of their assailant. As discussed, none of them were strangers to defendant. In addition, BNJ was sober, and her testimony was consistent with most of the victims' testimonies. EJP confirmed that it was defendant who struck her in the face, while BNJ recalled that EJP's face was already bleeding before she fought the unidentified individual. "Identity may be shown by either direct testimony *or* circumstantial evidence which gives the jury an abiding conviction to a moral certainty that the accused was the perpetrator of the offense." *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967) (emphasis added). The jury could infer from the timing of EJP's injury that defendant had caused the injury, rather than the unidentified party.

Likewise, LJ testified that it was defendant who struck him and caused the injury to his nose. This is again consistent with BNJ's testimony that she saw defendant fighting LJ, whom she then saw holding his face and bleeding. In contrast, KA testified that she did not know exactly who hit her, despite the fact that BNJ testified to seeing KA and defendant fighting. The jury's verdict, which convicted defendant of the counts related to EJP and LJ but acquitted him regarding KA, is consistent with the testimony. The existence of an unknown individual who "was punching people" and seemed to have "a small weapon in his hand" may support defendant's theory that someone else inflicted the victims' injuries. However, the jury was not obligated to accept that theory. See *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Johnson*, 58 Mich App 165, 167-168; 227 NW2d 272 (1975).

Defendant establishes only that there was some affirmative evidence from which the jury could have derived a different conclusion. Defendant has not shown that the evidence was insufficient to support the conclusions actually drawn by the jury.

IV. SENTENCING

Finally, defendant argues that the trial court imposed a disproportionally harsh sentence and that, considering defendant's qualities, a lesser sentence would ensure reasonable rehabilitation, the ultimate goal of criminal sentencing. However, defendant's sentence is within his sentencing guidelines range. Defendant does not challenge the trial court's scoring of his guidelines, nor does he challenge the accuracy of the information upon which the trial court relied. Consequently, pursuant to MCR 769.34(10), we are required to affirm his sentence. See

*People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017); *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).

We recognize that "[c]onceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances." *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). However, such circumstances are "uncommon." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992). Defendant has not established that any such exceptional circumstances are present in this matter. "A sentence within the guidelines is presumptively appropriate." *People v McClain*, 218 Mich App 613, 615; 554 NW2d 608 (1996). Defendant was sentenced within the appropriately calculated guidelines range by the trial court, and there are no unusual circumstances in defendant's case that warrant resentencing. Because defendant has failed to present facts overcoming the presumptive reasonableness of his sentence, we affirm defendant's sentence.

We also recognize that, at the time defendant submitted his brief on appeal, our Supreme Court had ordered briefing "addressing whether MCL 769.34(10) has been rendered invalid by this Court's decision in *People v Lockridge*, 498 Mich 358[; 870 NW2d 502] (2015), to the extent that the statute requires the Court of Appeals to affirm sentences that fall within the applicable guidelines range 'absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.' " *People v Ames*, 501 Mich 1026; 908 NW2d 303 (2018). However, our Supreme Court then denied leave in that matter. *People v Ames*, ___ Mich ___; 929 NW2d 283 (2019). In any event, this Court is required to continue applying its existing precedent until overruled. MCR 7.215(C)(2); See also *In re Certified Question from the United States Court for the Eastern Dist of Mich*, 490 Mich 922, 924; 805 NW2d 449 (2003) (YOUNG, J., concurring).

Affirmed.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause