*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GORDON DAVIS,

Defendant-Appellant.

UNPUBLISHED
November 19, 2019

No. 344891
Wayne Circuit Court
LC No. 17-010360-01-FC

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions for assault with intent to do great bodily harm, MCL 750.84, carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1), and being a felon in possession of a firearm (felon-in-possession), MCL 750.224f. The trial court found defendant not guilty of assault with intent to commit murder, MCL 750.83. Defendant was sentenced to 48 to 120 months' imprisonment for assault with intent to do great bodily harm, 60 months' imprisonment for felony-firearm as a second offense habitual offender, MCL 769.10, and 24 to 60 months' imprisonment for felon-in-possession. Defendant challenges his identity as the perpetrator. We affirm.

## I. BACKGROUND

There is no real factual dispute regarding the circumstances of the shooting. Based on the eyewitness testimony, the victim and the shooter engaged in an argument on the street somewhere between 5:00 p.m. and 5:30 p.m. Several eyewitnesses agreed that the argument entailed the shooter accusing the victim of breaking into his home. The shooter was driving a blue pickup truck, and the victim was on foot. The shooter produced a gun, the victim began running around the truck, and the shooter then shot at the victim numerous times, hitting the victim twice. One of the bullets penetrated the victim's chest. The shooter then drove away. The issue is whether defendant was the shooter.

Two of the eyewitnesses simply happened to live nearby. DR was eleven years old, and TP was DR's father. DR identified defendant at trial as the shooter and described the pickup truck as a Chevrolet. Defendant identified several discrepancies between DR's trial testimony

and his signed statement to the police, such as whether DR could hear what the argument was about, the make of the pickup truck, and the shooter's hair. However, DR denied making some of the statements or being told by the police that he could correct any errors in his statement.[1] DR agreed that he had described the shooter "as being dark brown," whereas defendant "was light skinned." He described the shooter as about six feet tall and 240 to 250 pounds, which the trial court later observed was "consistent with" defendant. DR was shown both a photographic and live lineup, and he was unable to identify the shooter in either lineup.

TP heard but did not actually see the argument and shooting, and he identified defendant at trial as the man he saw get into "a dented-up blue pickup" and drive away afterwards. TP was never shown a live or photographic lineup. TP agreed that his police statement indicated that he had described the shooter's vehicle as a blue four-door, which TP testified he never said. TP also agreed that the police statement indicated that he had described the shooter's skin color as dark brown, whereas defendant had a light complexion. However, TP testified that what he had actually told the police was that "he may have been dark skinned." TP testified that he had guessed to police that the pickup truck might have been a Ford, but he also indicated that he would not know what kind of truck it was without seeing its emblem.

A friend of defendant, CB, testified that she owned a blue Chevrolet pickup truck that she had left at defendant's house and that defendant had access to it at the time of the shooting. She identified her truck in two photographs admitted into evidence. DR identified those photographs as depicting the truck driven by the shooter.

The victim, LA, testified that he was walking on the street when a person he knew as "Gee" pulled up in a blue Chevrolet pickup and accused LA of burglarizing his house. LA identified defendant as "Gee." Defendant and LA stood by the truck arguing for two or three minutes when defendant shot at LA multiple times. LA was shot once in his chest and once in his bicep. A woman LA knew as "Poo" was on the scene. "Poo" called 911 and held a t-shirt against LA's wounds. When the police arrived, LA and "Poo" were both uncooperative, gave police officers false names, and claimed not to know who had shot LA. At the hospital, LA told the investigating officer, Detective Lawrence Mitchell, that he did not want to get involved. However, after LA's parole officer warned LA that he could be charged with obstructing a police investigation, LA told Mitchell that he had been shot by "Gee." LA informed Mitchell that he believed "Gee's" real first or last name might be Gordon, and he provided Mitchell with "Gee's" address. LA testified that he had known defendant for three to five years before the shooting. Mitchell identified defendant's house, performed a Law Enforcement Information Network (LEIN) search on defendant, and presented LA with a photograph of defendant. LA confirmed to Mitchell that the photograph was of the shooter.

"Poo" provided police officers at the scene with a false name, a false address, and a false telephone number. Nevertheless, she was eventually identified as LV. LV testified that "Poo" was her street name, and she had been present when defendant shot LA. She did not see the

---

[1] We note that DR and TP spoke to the police at the same time, and there is some implication in the testimony that the police may have mixed up portions of their respective statements.

actual shooting, because she hid and only heard the gunfire. She testified that she had known defendant for five or six years, and she had known LA for eleven years. LV stated that she knew defendant as "Gee," and she identified him at trial as the person who shot LV. She did not identify defendant as the shooter to the police because she did not want to get involved.

RB, defendant's longtime friend, testified that she picked up defendant from the Woodhaven Police Station at around 3:00 p.m. or 3:30 p.m. on the day of the shooting. On their way back to RB's home in Detroit, defendant stopped briefly to retrieve a package from the William Dickerson Facility, a jail in Hamtramck. RB and defendant arrived between 5:30 p.m. and 6:00 p.m. at RB's home close to downtown Detroit, where the two remained until RB left for choir rehearsal at 7:00 p.m. RB testified that defendant was still there when she returned at 8:00 p.m.; she did not think he left during her absence because he did not have a key or a vehicle. The prosecutor pointed out that the distance from the Woodhaven Police Station to the William Dickerson Facility was only 24 miles, and according to Google Maps, it should have been only a 45 minute trip. RB explained that the trip was slow due to "bumper to bumper" rush hour traffic. RB admitted that the trip from the William Dickerson Facility to her home was short. She testified that she believed defendant drove a blue pickup truck.

The trial court found that four eyewitnesses had identified defendant as the shooter. Two had known him for several years, and two did not know him at all. None of them had a motive to falsely identify defendant. The trial court recognized the various discrepancies in the testimonies and statements of DR and TP. However, it was convinced beyond any reasonable doubt that they had identified the shooter's truck as the same truck parked at defendant's house. The trial court opined that LV had been "quite a character," but it concluded that she had been candid and honest once she realized that she had to testify. It found the victim's testimony somewhat embellished. However, it concluded that the eyewitnesses' testimonies were substantially consistent and, implicitly, credible. In contrast, the trial court found RB's alibi testimony unbelievable, particularly her assertion that defendant did not leave her house because he did not have a key to get back in. The court found beyond a reasonable doubt that defendant was the shooter. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to prove beyond a reasonable doubt his identity as the shooter. Defendant particularly argues that the four eyewitnesses who identified him were unreliable and should not have been believed over defendant's alibi witness. We disagree.

The sufficiency of the evidence upon which a defendant was convicted is reviewed de novo "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of [the verdict]." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "[W]e are not permitted to interfere with the trier of fact's role of determining the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 620; 751 NW2d 57 (2008), citing MCR 2.613(C) ("regard shall be given to the special opportunity of the trial court to judge the

-3-

credibility of the witnesses who appeared before it"). Furthermore, this Court must defer to the trial court's weighing of the evidence. *Kanaan*, 278 Mich App at 621. Witness credibility is given great deference because it depends on more than mere words; and the courts may only interfere with the trier of fact's assessment of credibility under exceptional circumstances, such as testimony that is clearly physically impossible. *People v Lemmon*, 456 Mich 625, 642-647; 576 NW2d 129 (1998).

In rendering its verdict, the trial court emphasized that it understood the deficiencies in the eyewitnesses' testimonies. Indeed, the trial court found the victim's testimony to have been embellished. However, it also observed nonverbal aspects of the witnesses' presentations, their motives or lack thereof, and the extensive consistencies in their testimonies. In particular, the trial court was clearly and reasonably impressed by the quality of the evidence tying the truck seen at the shooting to defendant. Furthermore, two disinterested witnesses accurately described defendant's height and build. Several witnesses who had never interacted with each other provided consistent testimony regarding details of the shooting, such as the victim running around the truck. In contrast, the trial court reasonably concluded that RB had a motive to lie, and some aspects of her testimony were implausible, such as the duration of her drive and leaving defendant unattended despite not being far from his home. Defendant contends that RB's testimony was unrebutted. However, the trier of fact is not obligated to believe unrebutted testimony; it is only obligated to refrain from straying beyond inference into speculation. *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996).

We are not persuaded that the eyewitnesses' testimonies were so unreliable, or that RB's alibi testimony was so unassailable, that we should interfere with the trial court's assessment of their relative credibilities and weight. The evidence was sufficient to support the trial court's assessments of the witnesses' credibility, and we defer to those assessments. Therefore, the prosecution did not fail to prove beyond a reasonable doubt that defendant was the shooter.

## III. IDENTIFICATION PROCEDURE

Defendant argues that the victim's identification of defendant should have been excluded from trial because Detective Mitchell used an unconstitutionally suggestive identification procedure when he showed the victim a single photograph of defendant. We disagree.

Under the United States and Michigan Constitutions, "[a] photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." *People v Gray*, 457 Mich 107, 111, 577 NW2d 92 (1998), citing US Const, Am XIV; Const 1963, art 1, § 17; *Simmons v United States,* 390 US 377, 384; 88 S Ct 967; 19 L Ed 2d 1247 (1968). "[A]n improper suggestion often arises when the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person." *Gray*, 457 Mich at 111 (quotation marks and citation omitted). "[W]hen the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person." *Id*. (quotation marks and citation omitted). Because defendant did not object or otherwise preserve this issue at trial, we review the trial court's evidentiary decision for an abuse of discretion, and we review defendant's constitutional claim "for plain error affecting

substantial rights." *People v Gaines*, 306 Mich App 289, 306; 856 NW2d 222 (2014). Thus, reversal is not warranted unless an error, if any, "affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Notably, the victim in *Gray* was uncertain of her assailant's identity until a police officer showed her a single picture of the defendant and told her that the defendant had been arrested. *Gray*, 457 Mich at 109-110. In contrast, the victim here *was* certain of the identity of the shooter from the outset, but was only uncertain of the shooter's real name. Furthermore, the victim's identification in *Gray* was ultimately admitted based on the Court's finding that the victim had an independent basis for identifying the defendant. *Id*. at 114-115, 124. The victim here was well-acquainted with defendant and effectively *did* identify defendant even before being shown the photograph. It is clear that Detective Mitchell only showed defendant's photograph to the victim for confirmation and procedural thoroughness, not to establish identification. Indeed, it was the victim's identification of defendant that allowed Detective Mitchell to locate defendant's photograph in the first place. No improperly suggestive identification procedure occurred, so we find no plain error affecting defendant's substantial rights.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher